# 722·15

## Court of Criminal of Appeals of Texas

ORIGINAL

CASE NO. 02-14-00206-CR / TRIAL NO. CR-12706

Raul Villegas Garza,
Appellant / Pro-se

v.

The State of Texas
Appellee

Petition of Discretionary Review

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 10 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

JUL 10 2015

Abel Acosta, Clerk

To The Honorable Judges of The Court of Criminal Appeals of the State of Texas:

Come Now, Appellant, Raul V. Garza #1242954, And Respectfully submits this P.D.R. References to the Record in this P.D.R. will be by volume and page. The Clerk's Record is Referred to as (CR.___). The Reporters Record is referred to as (RR.___). The Supplemental Reporters Record is referred to as (RR.SU___). The Appendix documents are referred to as (AP.___). State's exhibits are referred to as (SX.___). And Appellant's exhibits are referred to as (DX.___).

## Point of Error No. 1 Restated

The Evidence from Appellant's Prison cell and his statements Should have been suppressed.

1

Appellant was charged with Aggravated Perjury, a third-degree felony, enhanced to a second-degree felony (count 1) Tex. Pen. C. §37.03 (A), and he was charged with Tampering with or Fabricating Physical Evidence, (count 2) Tex. Pen. C. §37.09(A)(2); CR 100, Ap. 1 Appellant pled not guilty to the charges and proceeded to try the cases to a jury. RR. V6, p8. Appellant was found <u>NOT Guilty</u> in count 1.

Prior to beginning of the trial, a series of pretrial motions were heard. On January 13, 2014, a pretrial hearing was had regarding Motion to Recuse or Disqualify Judge Ralph Walton, 355th Judicial District Judge. CR. 59, RR. SV1, p1. On March 25, 2014 A Motion to Suppress Video Confession and Appellant's Statement. RR. V4, p8

Robert Young, employed as a Hood County district Attorney's investigator, was called by the State. RR. V4, p8-10. Mr. Young testified that he travelled to the Michael Unit in Tennessee Colony, Texas to talk to TDCJ inmate, Raul V. Garza, Appellant, on March 4, 2013 RR. V4, p10-11 He met with Appellant at an empty office at the prison unit. RR. V4, p12-13, And that <u>NO ONE ELSE was in the Room but US</u>, RR. V4, p33, Appellant was read his Miranda Rights before the interview began, but did not PROBABLE cause to Arrest the Appellant for any crime. RR. V4, p13-14. The interview was recorded, and Young claimed that Appellant admitted falsifying Affidavits attached to the 6th Writ of Habeas Corpus. (hereinafter "WHC #6")

Audio and video versions of the interview were admitted into evidence. RR. V4 p 15, 17-18, SX. 1-2 Appellant wrote a statement that was admitted to evidence. RR. V4, p 18-21, SX 3, Appellant [S]igned a consent to search and relinquished control of document in his possession. RR. V4, p 29-31, SX. 4.

"According to DX. 12 the consent form was not signed by Appellant, RR. V4, p 64-66, Newly Discover Evidence (here in after "NOE #1") Mr. Young "~~forsed~~ "forged" the Appellant's signature to cover that he had no warrant to remove the Appellant's personal and legal files from Michael Unit"

The State did not seek a warrant prior to getting materials from Appellant's cell. RR. V4, p 45. Mr. Young told prison authorities to search Appellant's cell and take documents from his cell. RR. V4, p 49-50 Young recieved and review them. The Appellant, had confess and signed the consent to search form, RR. V4, p 50-51, 54 Appellant's cell was search, initiate by Young, occurred about 11:30 Am. And the consent to search form was signed by Appellant at 18:53 pm. In fact, Robert Young told the Appellant's that he did [N]ot need a warrant to seize documents. RR. V4, p 52-53 Appellant consented to going over the document with Robert Young, After he was told that no warrant was needed. RR. V4, p 57.

Wendy Carlson, a Handwriting Expert and Forensic document Examiner, testified by phone at the hearing. RR. V4, p 59, 63.

3

Ms. Carlson compared several samples of handwriting received from Appellant with the signature on SX. 4, the consent to search form; And, in her opinion, the consent form was not signed by Appellant. RR. V4, p 64-66, DX. 12.

"NOE. #1 according to Expert Ms. Carlson's opinion, Mr. Young forged the Appellant's Signature," Young testified, "that no one else was in the Room when the consent form was signed RR. V4, P.33.

At the motion to suppress hearing, Appellant testified next. He claimed that Mr. Young called him a liar several time. And that Young asked him if He masturbate, play with myself. RR. V4 p 83, 84. He claimed that Mr. Young wasn't listening to him, Young wasn't trying to hear the truth, Young was trying to convince me to say that yes, I did it. RR. V4 p 83, 84. He claimed that he made a false confession to Robert Young. RR. V4 p 82, SX. 3 Appellant claimed that he had never seen the consent to search form, unit it was shown to him by his trial counsel; And that the purported signature on that form was not his signature. RR. V4 p 82, SX. 4 Appellant requested that the trial judge listen to the entire Audio/video interview to determine whether the confession should be allowed to be admitted at trial. RR. V4, p 83-84, SX. 1-2 Appellant claimed that he was taken from his cell and held in a four-by four Room Unit they took him to talk to Robert Young, was waiting for a good hour-and-a-half, maybe two hours. RR. V4, p 84-85 Appellant testified that he confessed, because Young finally wore him down to where I was going to tell Young what he wanted to hear. Appellant was able to keep his five volume Trial Transcript

4

that he could not duplicat. ($2,322.00) he was indigent. Youns kept his promise for the exchange for his confession statement. This took place After Robert Youns shut-off his Audio Recorders, just prior to Appellant giving Youns the written confession. RR. V4 p 85-89, SX. 1-3, Appellant RENEWED his claim that he had NEVER SEEN the consent to search form until it was revealed to him by his Attorney. RR. V4, p 88-89, 94, SX=4

Some of the materials taken from Appellant's cell included communications with post-trial Attorney. RR. V4, p 90-91 Appellant claimed his 4th Amendment Right were violated, And the search And [C]onfiscation of his personal And legal materials from Michael Unit by Robert Youns. RR. V4, p 82

"Appellant is now claiming that A
Violation of his 4th, 5th And 14th Amend-
ment were violated by Robert Youns
forsing the Appellant's Signature on
the consent to Search form. N.O.E. #1"

The State confronted Appellant with his written Confession And questioned him about its contents and the circumstances surrounding his making it; Appellant "INSISTED" that he was under pressure to grant Robert Youns's demends for a confession in order to keep the irreplaceable Trial Transcript Record. RR. V4 p 95-97, SX. 3

Court's Decision

5

The trial judge, Judge Walton, denied Appellant's Motion to suppress the Appellant's personal and legal documents taken from Michael Unit, RR.V4, p 98, CR.185. Judge Walton denied Motion to suppress Audio and Video and written confession, SK.3, 1-2. RR.V5, p5, CR. 203, 205

Court of Appeals, second District of Texas, CASE NO.02-14-00206-CR Memorandum Opinion, Under Discussion

1. <u>Motion to Suppress</u> : This court ERROR, a page 4 last paragraph, The Appellant Argued that he did NOT consent to the [R]emoval of his personal and legal documents from Michael Unit. NOT the search.

A person has "standing" to contend that a search or [S]eizure was unreasonable if (1) he has a subjective expectation of privacy in the <u>place</u> or object searched, and (2) society is prepared to recognize that expectation as "reasonable" or "legitimate". U.S. Const. Amend. XIV, <u>State v. Granville</u>, 423 S.W. 3d 399, 404 (Tex. Crim. App. 2014)

The most recent case that addresses issues common to this case, by logical extension, is <u>State v. Granville</u>, 423 S.W. 3d 399 (Tex. Crim. App. 2014). The case involves the search of a high school student's cell phone stored in a jail property room, while the student was "<u>under arrest</u>." <u>State v. Granville</u>, 423 S.W. 3d at 401. The officer retrieved the phone, turned it on, downloaded (remove) a photo that was on the phone, painted the photo and retained the photo and the phone for evidence.

6

In this case, Appellant According to MR. Young testified, that the Appellant was *not underarrest*, that he was *not in his custody*, that Young had *no probable cause* to Arrest the Appellant, And that he had *no Arrest Warrant*. RR. V6 p 101-102

The officer And the prosecutor contended that an office *with* probable cause had the Authority to search Anything in the jail, *without* exception. State v. Granville, 423 s.W.3d at 402.

The Assumption that [P]risoners or pretrial detainees ARE without Any Fourth Amendment Rights is *NOT* supported by the Supreme Court. As a unanimous Supreme Court noted in 1974:

Lawful imprisonment necessarily makes unavailable many Rights And privileges of the ordinary citizen, a "Retraction" justified by the considerations underlying our penal system.".... But, though his Rights may be diminished by the needs and exigencies of the institutional environment, A *PRISONER* is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution And the prisons of this country. Wolff v. McDonnell, 418 H.S. 539, 555-56 S.Cf. 2963, 41 L Ed. 2d 935 (1974).

Expectations of privacy in jail may be diminished but ARE not nonexistent. State v. Granville, 423 s.W.3d at 411

An object of property to which an expectation of privacy Attaches involves A physical dimension And an informational dimension, And a defendant's

7

subjective expectation of privacy can attach to either or both. Even if a defendant's subjective expectation of privacy has been entirely frustrated with respect to the physical dimension of such [p]roperty, he may yet retain a subjective expectation with respect to the informational dimension. Walter. United States, 447 US 649, 651, 100 S.Ct. 2395, 65 L.Ed. 2d 410 (1980)

The Texas Court of Appeals has found that the 4th Amendment does apply and that incarcerated people have an expectation of privacy in their personal [Property], in this case data inside a smart phone, and that there was neither a WARRANT in support ....., U.S. Const. Amend. XIV, STATE v. GRANVILLE 423 S.W. at 404-405; Arizona v. Gant, 556 U.S. 332, 345, 129 S.Ct. 1710, 173 L.Ed. 2d 485 (2009)

The Appellant was not under arrest, was not in State 355th District Court or Hood County custody, nor did MR. Young have Probable cause or a warrant to remove the Appellant's personal and legal files from Michael Unit, The search and seize of Appellant's document was unrelated to prison-security concern.

Court in other jurisdiction have addressed inmate privacy issues — in U.S. v. Cohen, 796 F.2d 20, 23-24 (2d cir 1986) (detainee "retains an expectation of privacy within his cell sufficient to challenge the investigatory search ordered by the prosecutor" "to get evidence to aid them" in laying additional Indictment against a detainee"; the search was unrelated to jail-security concerns);

8

Lowe v. State, 203 Ga. App. 277, 416 S.E.2d 750, 752 (Ga. App. 1999) (pretrial detainee had reasonable expectation of privacy in papers in his cell containing his handwriting because search was unrelated to need of jail and was an attempt to find evidence to bolster State's case);

In the case of United States v. Cohen, the Appeals Court found that the search of the Appellant's prison cell was initiated by the prosecution, not prison officials; the decision to search for contraband was not made by those officials in the best position to evaluate the security needs of the institution, nor was the search even colorably motivated by institutional security concerns: And, tha the Appellant's privacy rights were violated within his cell. U.S. v. Cohen, 796 F.2d 20, 23-24 (2nd. Cir. 1986).

Under the 4th Amendment, Police officers may search an arrestee and the area within the immediate control of the arrestee... U.S. Const. Amend. State v. Granville, 423 S.W. 3d at 410, Arizona v. Gant, 556 U.S. 332, 345, 129 S.Ct. 1710, 173 L.Ed. 2d 485 (2009). But, even if the State had relied upon the "search incident to arrest" doctrine in this case, there was NO ARREST nor was there was an exigent circumstance. Arizona v. Gant, 556 U.S. 332, 345, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)

The Appellant is a convicted prisoner, but, the Hood

9

District Attorney did not send investigator Robert Young to investigate convicting case. This was a interview about A new crime. And According to Mr. Young, He had NO probable cause, had NO warrant to search or SEIZE Appellant's property, that the Appellant was NOT under arrest, and that the Appellant was not in his custody. Therefore the Appellant was not a pretrial detainee, or an arrestee.

The Court of Appeals, has "ERROR," in their opinion under the Appellant's first point As to the search of his prison cell And SEIZURE of the tangible evidence. That both Cohen and Lowe do Aply because this search and seize was NOT done by TDCJ for security or discipline reasons. but to further the state's effort to obtain a new conviction against A prisoner. Just As Robert Young forged the Appellant's signature on the consent to search form. (N.O.E. #1)

The Court of Appeals, ERRORED when they stated, "(distinguishing Cohen on ground that Appellant was a convicted prisoner) but, I was NOT A convicted of a new crime, when my Rights were violated by Young when he remove my property (documents) from Michael Unit. If the 4th Amendment does not Aply to A suspect, which the Appellant was At the time that his cell was search and sieze by the order of the Prosecutor. There would be NO Reason for a consent to search form. The Granville, Cohen and Lowe cases do Aply And support the Appellant's ground in first point. Appellant asks this Court to correct the lower Court opinion.

2. Motion to suppress by Court of Appeals: Court ERRORED in their opinion: Appellant mailed on June 6, 2015 a copy of Newly Discovered Evidence #1. The facts in NDE #1 support the Appellant reason that his confession was result of coercion. or duress.

REASONS ONE: Was called a liar several time,

Reason two: Was asked question about the Appellant's convicted case, like do I masturbate, do I play with my self, questions that are irrelevant to this investigation,

Reason three: Mr. Young was NOT trying to hear the truth,

Reason four: And Young told the Appellant that he could keep his five-volume Trial Transcripts for a confession.

The fact is that Young took irrelevant documents (letter from Attorneys, personal letters, Medical Records, birthday cards, Christmass cards, and TDCJ's inmate Records) for this investigation but just leave the Appellant's five-volume T.T. Again, the reason for the Appellant could keep the 5 Vol. T.T. was to confess to this crime. RR. V7 p. 207, 242, 243, V8, p 30.

The two reasons was that the Appellant did not have $2,322.00 to replace them. And that he needed his

11

five-Volume Trial Transcripts and his medical information because they were vital Resources that he needed to use to prepare a parole package. RR. V.7 p 269-270

Appellant was Awakened at 4:30 AM, And was willing to talk with MR. Young, And After a few hours the Appellant got tired of being "Badgered" by MR. Young. So the Appellant told Young what he thought he wanted. A confession. RR. V.7 p 285-286.

Appellant wanted An Attorney, but Young was going to take All his personal and legal files. And Appellant fighting a wrongful Conviction and coming up for parole, his files were very important. Young, told the Appellant that he could not get An Attorney here tonight but he was going to Remove All the Appellant's files that Night. RR. V7 p. 267, 268, 269, V.8 p 12, 13, 15 and 16, And V8, p 20, 21 and 29. DX-119 + 119A.

Young accused the Appellant's Sister, RR. V7 p 272-286, V8 p. 22, 23-25, Appellant was lied to And Young called Appellant a liar RR. V.8 p 9-21, 23-25.

The Court of Appeals ERRORED, (Court Memorandum opinion) ps. 7 Ln. 2 the entire conversation was NOT Audiotaped. MR. Young turn off the Audiotape before Any conversation of MR. Young promise AND COERCE the Appellant for a writen confession. RR. V4 p. 33 + 34. Young forged the Appellant's Signature on the consent to search form. N.O.E. #1

12

The lower Court, (355th District Court) ERRORED, in the issued of findings that "beyond a REASONABLE doubt, without RESARD to the truth or falsity of said Audio taped AND Video tape oral statement, that the same was freely AND Voluntarily made, Judge Walton, did not hear All the conversation NOR did He hear Youns PROMISS AND COERCED the Appellant when Investigator Youns, turn off the Audio AND the Video tape RECORDS. RR. V4, p33-34. Also Judge Walton did not SEE N.O.E. #1 Youns forsed the Appellant's signature.

The Motion to Suppress should have be suppress, Appellant asks this court to overrule the Court of Appeals Ruleins.

Point of ERROR NO. 2: The Evidenc is legally insufficient To support the findins of Guilt. STATEMENT of Facts

Appellant pled not Guilty to count 1 and 2 of the indictment RR. V6, p8 The substance of the State's case was explained in the prosecutor's openins Arsument:

The defendant is charsed with makins false claims in that writ #6, and he's charsed with manfacturins false documents that He included in that writ.

The tamperins with evidence charse involues the two fake Affidavits that this defendant

13

created. And we're going to show you that they're fake. It's obvious they're fake when you look at them. And they were material to this proceeding because the defendant used those documents to try to claim that he was actually innocent of his original charge.

(count 1) The Aggravated perjury comes from the fact that _this_ defendant not only included those documents in that writ, but he also, in writing made some false claims in that writ. And that's where the Aggravated perjury come from RR. V6 p 9-10.

The state opened in case with an offer of all six writ of Habeas corpus filed by or on Appellant's behalf, over the years, since his conviction in 2004, SX 1-6, 1B-6B, RR. V6 p 33

STATE Witness - Priscilla Sides F/K/A Priscilla Kindle A/K/A Priscilla Kendall:

Previous wife of Raul Garza, Appellant, RR. V6, p 46-47. Ms Priscilla Sides "Identified an Affidavit _she signed_ as Priscilla Garza on April 17, 2000 DX 140, SX 42, RR V6 p 49-50, DX 139, DX 51

[Facts] - Priscilla Sides, testified that she had a disorder of Multiple personality RR V6 71-22 Priscilla Sides also stated, that she used the name of Rebecca as a personality. RR. V6 p 72 And one personality some

14

time did not know what the other personality was doing RR.V6, p 77 And According to Exhibit DX54,134-140 RR V7p184 Priscilla Sides sign All three signature.

These facts came out on cross-examination under a bill of exception. The Jury was not Allow to see or hear this evidence. These facts were favorable, "beyond a reasonable

STATE Witness no 2, Robert Young, the district Attorney's investigator, to testify. RR.V6 p92 Young was given the Appellants WHC #6 to investigate RR.V6, p 94-97, SX 6 Thereafter, on March 4, 2013 Young stated that he met with Appellant at Michael Unit At which Appellant was being held. Young testified that he had No Probable cause to Arrest the Appellant, RR V6, p 101-102 Young had No Arrest Warrant, RR, V6, p 101. And that the Appellant was not in his custody, RR V6. p 101

MR. Young stated that the Appellant gave him permission to remove the Appellant's documents from him and off Michael Unit And that Young really did not need Appellant's permission to remove those documents. If this is true way did Young "forged" the Appellant's signature on a consent to search form. NOE #1 The State offered into evidence the following:

SX.36 - video recording of interrogation. (SX.2 At the suppression hearing) SX.12 - Appellant's written statement (SX.3 at suppression hearing)

15

SX,13 – A full Audio Recording (2 and ½ hours long) before the interrogation was _over_ (SX,1 at the suppression hearing) RR. V6, p 108-113 _Fact_ "the Audio was turned off before interrogation and written Statement was given," RR, V4 p. 33-34 (At the pretrial hearing)

SX,14 the consent to search form _used_ to ~~Move~~ "Remove" documents from Appellant's prison cell at TDCJ, Michael Unit" RR. V6 p 108-116 _Fact_ According to consent to search form it was sign at 18:53 p.m. which is in violation in it self, And the signature of the Appellant was forged, RR. V4 p 68-70.

Defense counsel "objected" to entry of these items of Evidence because they were the subject of the suppression hearing, RR. V6, p 113-114. The lower court _error_ in Allowing these evidence Admitted when it was taken in violation of the Appellant's 4th, 5th And 14th Amendment.

The State Also offered the following into evidence; SX. 15-32, 35 RR. V6, p 108-121," All were Admitted As items from Appellant's prison cell RR. V6, p 124 Defense counsel objected to these Exhibits As the product of the illegal search of Appellant's cell in violation of the fourth Amendment, RR. V6, p 124.

Mr. Young was cross-examined by defense counsel. Young Admitted that the envelope in which WHC #6

16

mailed from Phoenix, Arizona. DX35, RR. V6, p172 Mr. Youns confirmed that it was mailed by John Pizer not the Appellant. RR. V6, p173 Youns confirmed that the Appellant did not have typewriter. RRV6, p179-180 Mr. Young confirmed that John Pizer used inmates to help him with his legal task — Among those were research, copying or using a typewriter. RR. V6, p179-181 Mr. Young confirmed that John Pizer signed WHC #6 RR. V6, p183 when filed, WHC #5 was signed by Appellant under inmate Declaration. RR. V6, p197-198, SX.5 But WHC #6 was signed by John Pizer As Raul Garza, Appellant, which contravened/violate the writ Application's instructions. RR. V6, p199-200, SX.6 Mr. Young received an investigation Report from Arizona's Attorney General investigators on John Pizer, Pizer Admitted that he had forged the Appellant's signature and that Dr. Hezmall responded back with the Affidavit. paragraph 9 and that Priscilla Responded with an Affidavit much later, Paragraph 17. RR. V6, 181, John Pizer never told the A.G. investigators that the Appellant sent him those forge Affidavits. Mr. Young Admitted that he Acted on his own by removing the Appellant's personal And legal files from Michael Unit. RR. V4, p 49-51 Mr. Young Addmitted that the Appellant had some Rights under the 4th and 5th Amendment. RR. V4, p51

Appellant's Counsel made A motion for instructed Verdict After the State's case in chief for : Count 1 (perjury) — that Appellant neither signed nor did he file WHC #6 with the clerk of the Court in Hood County, Texas;

17

And, As to count 2 (tampering) - there was no evidence that Appellant produced or changed Dr. Hezmall's and Priscilla side's Affidavit and _no evidence_ that the tampering occurred in Hood County, Texas. RR. V7, p 7-9 The trial judge denied those motions. RR. V7, p 7-9 which was An _ERROR_ in judgment

_Defend witness_ - Tonna Hitt, Hood County District Clerk, Admitted that her office received an envelope with WHC #6 on February 8, 2013 and that the envelope came by mail from Arizona, which included both forged Affidavits. RR. V7, p 12-14 Ultimately, the Court of Criminal Appeals "_Dismissed_" WHC #6 As not being in compliance with form requirement for filing a writ. R.R. V7, p24, 26, 31-32, TRAP 73.1 And 73.2

_Defense witness_ - Tracy Board, A D. Clerk with Hood County District Clerk's office. RR. V7, p 45-46 Ms Board testified that she "Received" and filed an "Noncompliant Application. RR. V7, p 54, DX, 131.

_Fact_ - Ms. Board, Violated TRAP 73.1 no missing pages, and not be downloaded from a computer, It to be returned As Noncompliant. RR. V7, p 34-35, 50, 51-54

_Defense witness_ - John Pizer, An 87 years old, A Retired Resident of Phoenix Arizona, A non-lawyer And the president of Prison Legal Aid Association. RR. V7, p 59-60

18

MR. Pizer testified that he prepares documents and files documents for prisoners seeking post-adjudication relife on their cases. RR.V7, p 60-61 He stated that he liberally uses the assistance of other [PRISON INMATES] to prepare documents/writ Required to service his other client's needs, including that of Appellant. RR.V7 p 61-62

All correspondence with Appellant was by mail; MR. Pizer and Appellant had never met. RR.V7, p62-66 DX. 120, 122, 123 MR. Pizer assisted Appellant in preparing and filing WHC #5. RR.V7, p63, SX. 5 However, it was Appellant who filed WHC #5. RR. V7, p97, 105-106

Pizer had written two letters to DR. Hezmall, inquiring about Appellant's case. RR.V7, p64 MR. Pizer wrote letters and "MADE" the Affidavits for DR. Pat Hezmall's signature in Regard to Appellant's case. RR.V7, p 79, DX. 120, 122, 123 Also Pizer told the Arizona Attorney General investigators on May 30th, 2013 paragraph 9-10 DR. Hezmall mailed him the Affidavit. RR. V7 p 73 MR. Pizer also received Priscilla Sides. RR. V7, p 80, & Pizer also told A.G. investigators on May 30th, 2013 in paragraph 17 Priscilla responded back with an Affidavit. MR. Pizer, alway used the word "N-A-U-G-H-T" which was used in both forged Affidavits RR.V7, p64-65, 82, 83 Pizer testified that he had a typewriter and that his Research inmates used typewritten format. RR. V7 p 83 MR. Pizer ASSEMBLED and mailed WHC #6 to the Hood County District Clerk from his Arizona office. RR.V7, p 81-82 MR. Pizer included the included the two forged Affidavits that he "MADE" RR.V7, p 82-83, SX. 6

19

MR. PIZER contained notary stamps that were on documents contained within MR. PIZER's files. RR. V7, p88-90, DX. 123, SX-26-27 MR. PIZER admitted that Appellant had "NOT" Requested that MR. PIZER file WHC #6. RR. V7, p 97 MR. PIZER testified that at NO time did Appellant Request that MR. PIZER CREATE false documents to ADVANCE Appellant's case. RR. V7, p 96 MR. PIZER testified that he had NEVER witnessed Appellant PREPARE OR USE false Affidavits, NOR had Appellant EVER Requested that such Affidavits be used in his case. RR. V7, p87-88 MR. PIZER also included the letter from DR. JESSE GARCIA in WHC #6, After he "Added" a false date to the letter. RR. V7, p 110

MR. PIZER signed Appellant's NAME instead of his OWN when filing WHC #6. RR. V7, p 275-276, RR. V8, p 163. SX. 6 MR. PIZER signed Appellant's NAME to WHC #6, prior to filing it with the clerk. RR. V7, p 90, 94, SX. 6. MR. PIZER testified that he sent a copy of WHC #6 to Appellant After he mailed it to the District clerk's office. And that the Appellant complained about WHC #6's form And that he had not told PIZER to file any WRIT. RR. V7, p84-85 MR. PIZER stated that he Responded to Appellant's criticism and gave an explanation for what and why he filed what he filed on Appellant's behalf, After he had filed WHC #6. RR. V7 p86-87 DX. 33 MR. PIZER admitted that he has a "damaged memory." RR. V7, p 104

MR. PIZER still believes that Appellant was wrongful convicted (in 2004). RR. V7, p 122 The facts show that MR. PIZER MADE, PRESENT AND USE documents [the Affidavits]

20

with the intent to affect the course or outcome of the official proceeding [the filing of the writ] in CR.2CO paragraph II, Tex. Pen. C, § 37.09 (a)(2).

Defense Witness — Wendy Carlson, a handwriting and forensic document examiner, to testify. RR.V7, p160. Ms Carlson compared signatures and compiled report. DX.136-138 RR.V7, p164

Ms. Carlson compared the purported signatures of DR. Hezmall and Priscilla Kendall (Priscilla Sides) against Appellant's known signature. DX.139 and 140, RR.V7, p168 Ms. Carlson was very confident confident that Appellant did "NOT FORGE" the name of DR. Pat Hezmall in regards to WHC #6. DX.139 + 140 RR.V7, p174 Ms Carlson was very confident that Appellant did "NOT FORGE" the name of Priscilla Kendall in regards to WHC #6. DX.139 + 140. RR.V7, p179 Ms. Carlson further testified that it is highly likely that MR. Pizer signed DR. Pat Hezmall's signature in DX.35 RR.V7, p185 Ms. Carlson was very confident in her opinion that Appellant did "NOT SIGN" the consent to search form. SX.14, DX.134-140, RR.V7, p180 Ms. Carlson compared the known signature of Priscilla Garza (Priscilla Sides) against the alleged forged signature of Priscilla Kendall (Priscilla Sides) and Ms. Carlson conclusion was that they were written by the same person. RR.V7 p184 Ms. Carlson further compared the signatures of Priscilla Garza, Priscilla Kendall and Rebecca Kendall and concluded that all three signature were "AUTHORED" by the same person — Priscilla Garza A/K/A Priscilla Kendall A/K/A Priscilla Sides, DX.134-140, RR.V7, p184. [The jury should have heard Priscilla Sides testimony on her disorder.

21

All the above testimony clearly show that MR. John Pizer MADE, PRESENTED AND used the false Affidavits in WHC#6 without Appellant knoww or premission, MR. Pizer violated Tex. Penal Code Ann. § 37.09 (a)(2)

Defendant Appellant, Raul Villegas Garza, testified that he did NOT SISD the Application for WHC#6, RR. V7, p206 Appellant testified that he did NOT MAKE the Affidavit of DR. Pat Hezmall or Priscilla Kendall (Priscilla Sides) that were Attached to WHC#6, SX.6, RR. V7, p 206 Appellant denied that he instructed other to MAKE those Affidavits. RR. V7, p 206. Appellant denied MAKING, PRESENTING. or USING ANY false Affidavits. RR. V7, p207 Appellant gave a false confession, After Young turn off the Audio tape before the written statement done. RR. V4, p 33 + 34, Appellant was "Badgered". RR. V7 p 285-286 Appellant's sister was being "Accused" by Young RR. V8, p 9-21 AND 23-25. Appellant was Promise AND coerce that if he would give Young A confession Appellant could keep his five volume Trial Transcripts, he needed for a parole package. RR. V7, p 269, RR. V8, p 13-14, 15, 21-24, 25 AND (31), RR. V7, p.207 Appellant knew that Pizer had downloaded WHC#6 AND that it was missing page AND According to TRAP 73.1 the Clerk would mail it back RR. V7 p 211

Appellant testified that when he became aware there was a problem with WHC#6, he tried to protect MR. Pizer, because MR. Pizer was old, AND he had previously made mistakes on a prior writ (WHC#5) that MR. Pizer had help Appellant prepare. RR. V7, p 207-208, 210, 212-213

22

Appellant "denied" that he requested preparation of WHC #6 by MR. Pizer; he did "NOT" request the attachment of any fake affidavits; and, he did "not" request that anyone else supply MR. Pizer with fake affidavits. RR. V7, p 213-214 Appellant claimed that he was prepared to begin preparing his own WHC #6, but then he found out that prisoners with appeals in state or federal courts would probably NOT make parole — he was set to be paroled in May, 2013. RR. V7 p 214-215,

Appellant "MUST"... make, present and use documents [the affidavits]... with the intent to affect the course or outcome of the official proceeding [the filing of the writ]... CR. 210 paragraph 11, Tex. Pen. C. § 37.09 (A)(2)

In late January or early February 2013, MR. Pizer sent Appellant an unsigned draft of WHC #6, without any attached affidavits or other documents attached. RR. V7, p 215-216 Appellant testified that without "consulting" him, and without his knowledge, MR. Pizer mailed WHC #6 to the Hood District Clerk. RR. V7, p 217-218, 271-272 Appellant claimed that the first time that he saw the signed and filed WHC #6 was when MR. Young came to interrogate him at the Michael Unit prison facility. RR. V7 p 230 The Video of the interrogation of Appellant by MR. Young was published to the jury. RR. V7, p 230, SX, 13, DX. 20-22

## VERDICT

During its closing argument, the State emphasized

23

the parties' law of Texas. RR.V8,p174. The State claimed, "... there is only one person that these false documents and the false writ benefited." RR.V8,p189

The Defense's closing emphasized that no actions were taken in Hood County, with the exception of the filings WHC#6 — And that was done by Mr. Pizer. RR.V8,p176,179 Appellant had "No Knowledge" that the WHC#6 was even filed. RR.V8,p176

The Jury did not understand the wording in the Indictment; During deliberations, the jury asked:

Q1. Does Mr. Garza have to have Knowledge of filing to be found guilty?" RR.V8,p190-191

A. The Judge Refused to Answer the question; And

Q2. Can you please difine "to wit"? RR.V8,p191

A. The judge Refused to Answer the question.

The jury found the Appellant Not Guilty on count 1 (Perjury), And it found Appellant guilty on count 2 (tampering with or fabricating evidence). RR.V8,p184-183

Appellant pled true to enhancement paragraph #1 RR.V8,p194 The jury sentenced Appellant to 20 years in TDCJ with no fine. RR.V8,p213

24

## ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR No. 2
### Legal Sufficiency of the Evidence

Tex. Penal Code § 37.09 (A) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:

The Appellant's jury found the Appellant not guilty of knowing that an investigation or official proceeding was pending or in progress.

(2) makes, presents, or uses any record, document, or thing with KNOWLEDGE of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.

The Appellant's jury did not know what the word "to-wit" ment, found the Appellant NOT Guilty in count 1.

Brosky v. State, 915 S.W.2d 120, 144 (Tex. App.— Fort Worth 1996, pet. ref'd). "[F]or a person's actions to fall within ... §37.09, a separate criminal offense must already have been committed; otherwise, the actor could not kn[ow] that an investigation .... is pending".

The Court of Appeals erred in analyzing the sufficiency of the evidence, According to Brosky v. State, Jury found the Appellant not Guilty of Aggravated Perjury count 1 a criminal offense. Appellant did not kn[ow] that a separate crime was committed until March 4, 2013.

25

The Fourteenth Amendment to the constitution protects a defendant's right to a fair trial; [If the state was so sure that the Appellant had No Rights under 4th Amendment, And did "NOT NEED" A SEARCH AND SEIZE WARRANT, why did the Hood County investigator MR. Robert Young forged the Appellant's Signature on a Consent to Search form?] The presumption of INNOCENCE is A basic component of that right. U.S. Const. Amend. XIV, Tex. C. Crim. Proc. Art. 38.03 Federal due process holds that A conviction is unconstitutional unless, After viewing the evidence in a light most favorable to the prosecution, A Rational tries of fact could have found the essential elements of the crime beyond A REASONABLE doubt. Jackson U. Virginia 443 U.S. 307, 318; 99 S.Ct. 2781; 61 L.Ed. 2d 500 (1979), NARVAIZ V. State, 840 S.W. 2d 415, 423 (Tex. Crim. App. 1992).

In 1979, the United States Supreme Court Recognized for the first time, in Jackson u. Virginia, federal, due process standard for sufficiency of the evidence, below which a state court conviction cannot be sustained. Jackson, 443 U.S. at 316-20 The Texas Court of Criminal Appeals has stated that there is NO meaningful difference between legal and factual sufficiency standards of evidentiary review claim. Brooks U. State, 323 S.W. 3d 893, 895, 912 (Tex. Crim. App. 2010). Thus, the Court of Criminal Appeals uses only the Jackson standard in evaluating the sufficiency of the evidence to support "EACH ELEMENT" of the charged offense.

"Appellant's jury found him "NOT Guilty" in County Low Knowing that an investigation or official Proceeding was Pending or in progress."

26

_Jackson_, 443 U.S. at 316-20 In A due process review, the Reviewing court views all of the evidence in a light most favorable to the decision, to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. _Isassi v. State_, 330 S.W. 3d 633, 638 (Tex. Crim. App. 2010)

Appellant's Jury found him "NOT Guilty" for presenting WHC#6 with the two forged Affidavits And "knowing" that an official proceeding was in progress in Count 1. _Grotti_, set forth two straightforward ways in which evidence can be deemed to be factually insufficient: (1) when the evidence supporting the verdict is so "weak" that the verdict seems clearly wrong And manifestly unjust; And (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence, so as to render the verdict clearly wrong And manifestly unjust. _Grotti v. State_, 273 S.W. 3d 273, 283 (Tex. Crim. App. 2008) The remedy is reversal of the judgment for the Appellant. _Grotti_, 273 S.W. 3d at 283, Tex. C. Crim. Proc. Art. 44.25

When performing this review, the court must give due deference to the fact finder's Assessment of the weight and credibility of the evidence. _Johnson v. State_, 23 S.W. 3d 1, 16 n. 20 (Tex. Crim. App. 2000) The court can find the evidence factually insufficient only where necessary to prevent manifest injustice. _Roberts v. State_, 220 S.W. 3d 521, 524 (Tex. Crim. App. 2007) To reverse upon a determination of manifest injustice, the court must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. _Watson v. State_, 204 S.W. 3d 404, 417 (Tex. Crim. App. 2006); _Johnson_, 23 S.W. 3d at 11

27

## SUFFICIENCY OF THE EVIDENCE - THESE CASE FACTS
### Applicable Criminal Law

Appellant's Jury found him "NOT Guilty" of [K]nowing that AN investigation or official proceeding was pending or in progress, when WHC#6 with two forged Affidavits was filed, "Count 1".

A person commits tampering with, or fabricating, physical evidence if, knowing that AN investigation or official proceeding is pending or in progress, he MAKES, present, or uses Any record, document, or thing with knowledge of its falsity and with intent to Affect the course or outcome of the investigation or official proceeding. Tex. Pen. C. § 37.09(A)(2) Thus, knowledge that the statement is false is AN essential element of tampering with physical evidence. "Tampering with or fabricating physical evidence concerns matters where the defendant has Altered, destroyed, or concealed physical evidence." CARRION V. State, 926 S.W.2d 625, 627 (Tex. App. - Eastland 1996, reh. overruled) In order to commit the offense of fabricating physical evidence As, Alleged in the indictment, the trial record would have to show that Appellant "made" the document or record, and with the knowledge of its falsity, and used it to Affect the outcome of the filing of WHC#6, CARRION V. State, 926 S.W.2d at 627.

Appellant's Jury Asked the Question, Does Raul Garza have to have "Knowledge" of the Act of filing to be found guilty? R.R. V8, p190-191 Jury found GARZA NOT Guilty of having knowledge that WHC#6 was filed with the two Affidavits that was made, presented and used by MR. John Pizer.

28

The Trial judge instructed the Jury that Appellant [M]ust "... make, present and use documents [the Affidavits] ... with the intent to affect the course or outcome of the official proceeding [the filing of the writ] ... " (Jury found Appellant NOT Guilty of this in count 1 filing of the writ #6) CR. 210 paragraph 11, Tex. Pen. C § 37.09 (A)(2) This instruction increases the burden on the State, and it required the jury to find culpability on the part of the Appellant beyond required by the statute. CR.100, Ap. 1, Tex. Pen. C. § 37.09 includes two different culpable mental states — knowledge and intent. Tex. Pen. C. § 37.09, Stewart v. State, 240 S.W. 3d 872, 874 (Tex. Crim. App. 2007), Williams v. State, 270 S.W. 3d 140, 142 (Tex. Crim. App. 2008) Section 37.09 (A)(2) requires that the Actor present the evidence with the requisite knowledge that the evidence is false and with the intent that the evidence would affect the outcome of the official proceeding. Waldrop v. State, 219 S.W. 3d. 531, 535 (Tex. App. — Texarkana 2007) Again Appellant's Jury found him "NOT Guilty" in count 1 of knowledge or the intent of filing an writ Habeas Corpus #6 with two forged Affidavits or knowing that investigation or official proceeding was pending or in progress. Therefore count 2. was part of count 1.

John Pizer is the person who had written to Dr. Hezmall and Priscilla Kendall (Priscilla Sides). RR. V7. p 64 Mr. Pizer "prepared" the Affidavits for Dr. Pat Hezmall's and Priscilla Kendall's (Priscilla Sides) signatures. RR. V7, p 79, DX. 120, 122, 123 Pizer received both Affidavits that appeared to be signed by Dr. Hezmall and Priscilla Sides, RR. V7, p 80, 82-83 Mr. Pizer Assembled and mailed WHC#6 to Hood County District Clerk from Arizona. RR. V7, p 81-82

29

MR. Pizer signed Appellant's Name instead of his own Name, when filing WHC#6. RR.V7,p 275-276, RR.U8p.163,SX.6 DR. Hezmall's and Priscilla Kendall's (Priscilla Side) Affidavits, both contained Notary stamps that were on documents "contained" within MR. Pizer's files. RR,V7,p 88-90, DX.123, SX.26-27

MR. Pizer [A]dmitted that Appellant had not Requested that Pizer file WHC#6 RR.V7, p97 MR. Pizer testified that At [N]o time did Appellant "Request" that Pizer create false documents to Advance Appellant's case. RR. U7, p96. MR. Pizer testified that he never witnessed Appellant "Preparing or using" false Affidavits or [R]equesting that such Affidavits be used in his case. RR.V7, p97-98

There is [N]o Evidence that showed that Appellant did "make, Present and use false documents." CR,210 Paragraph 11, Tex,Pen.C.§ 37.09; Waldrop V. State, 219 S.W. 3d at 535 Appellant Neither made produced and used the Affidavits complained of, nor According to MR. John Pizer's testimony, did Appellant Attempt to induce MR. Pizer into using false Affidavits. MR. John Pizer "Alone" was the Party Responsible for producing, signing and filing WHC#6, with [N]o involvement, input or even [p]ermission from Appellant.

Under Jackson, A jury may draw a Reasonable inference, so long as the inference is supported by the evidence, A jury is NOT permitted to Assume a conclusion based on speculation or a factually unsupported inference or presumption, Hooper V. State, 214 S.W.3d 9,15 (Tex. Crim.App. 2007) A conclusion Reached by Speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support

30

A finding beyound a Reasonable doubt. _Hooper v. State,_ 214 S.W. 3d at 16.

Appellant's jury did "NOT" understand the [L]anguage nor the [D]efinition of a word in the indictment; Appellant's jury asked two questions while considering their verdict:

(1) "does MR. GARZA have to have knowledge of the Act of filing to be found guitty"? Court's Response "I cannot Answer your question."

(2) "Can you please define "to-wit"? Court's Response, "I cannot Answer your question" RR. V8 p 190-191

Appellant's jury was [C]onfused to the detriment of Appellant. The jury baby-split the verdict, Appeallant was found NOT Guilty of Aggravated Perjury and of filing WHC #6 either Acting Alone or with MR. John Pizer As a party to the offense. CR. 210, PARAGRAPH 9 Also in Count I Appellant was found NOT Guilty of knowing that An investigation or An official proceeding was in progress.

Due-process Requires that Appeals courts REVERSE, the Appeal Courts ERROR by not ordering a judgment of Acquittal, if a Rational jury would entertain a Reasonable doubt As to a defendant's guilt. _SWEARINGEN v. State,_ 101 S.W. 3d. 89, 95 (Tex. Crim. App. 2003)

31

## Point of ERROR NO. 3 RESTATED

Judge Walton, Jr. should have been Disqualified from Presiding over the trial of the case

### STATEMENT OF FACTS UNDER POINT OF ERROR NO. 3

Prior to the trial of the case, on January 13, 2014, A pretrial hearing was had regarding the Defense's Motion to Recuse or Disqualify Judge Ralph Walton, 355th Judicial District Judge. CR. 59, RR. SV1, p1 (Reporter's Supplemental Volume 1) Jeff Walker, Regional judge for the 8th Administrative Region, presided. RR. SV1, p1 Mark Piland was present for the Defense and Robert Christian was for the State. RR. SV1, p2

Appellant, Raul V. Garza, gave defense Attorney Mr. Piland two complaint on Judge Walton, Jr that was filed to the "State Commission of Judicial Conduct" that he filed, DX 34. RR. V7, p224.

Appellant, was called to testify at the hearing. RR. SV1, p9. Appellant testified that Judge Ralph Walton, Jr. Represented him while in private practice on a sexual Abuse case in September 1998. RR. SV1, p9 Appellant claimed that the defense of that case involved the same defense — Among them, impotency — that Appellant used in defense of his later case (Cause No. 9232) in 2004, when Appellant was Represented by Andrew Ottaway. RR. SV1, p9

Appellant was convicted in that case, Cause No. 9232,

32

And sentenced to prison, Judge Walton, Jr. was the presiding judge in that case. RR. SVI, p 9-10. Appellant requested that defense Attorney MR. Ottaway pursue Recusal or disqualification of Judge Walton, JR. because of Judge Walton's previous Representation of the Appellant, but MR. Ottaway failed to pursue the motion to Recuse or disqualify Judge Walton And Refused or failed to subpoena Judge Walton to be a defensive witness in the case 9232. RR, SVI, p10

Appellant testified that he believed that Judge Walton's past employment As his counsel And Judge Walton's involvement in the prior trial And his Review of each WHC#1,2,3,4,5, would make it difficult for Judge Walton to be impartial in the current case Regarding WHC#6. RR, SVI, p11

Judge Walton was "[p]Artial" in this trial, CR-12706, first Judge Walton "Grant" the following motions:
  (A) For discovery of Arrest And conviction Record of State's witness;
  (B) For production of evidence favorable to the Accused;
  (C) for discovery of exculpatory, mitigating evidence;
  RR, V3, p24

Judge Walton, stated that this trial CR-12706 Aggravated perjury would be Restricted to the Relevant of this case only that this is not California, we're not going to try things that Are not Relevant to the issue in this indictment. RR. V4 p 102-103. Defense Attorney MR. Piland stated, It would be highly prejudicial, Your Honor, for All that information to

Come About, Indecency with a child, without him having
an opportunity to try to prove his Innocence on that. RR.V4,
p 102. Most of the interview between Mr. Young and the
Appellant was about his birth defects, could he masturbate,
did the Appellant play with himself. SX 1, 2 +3. RR.V7 p. 238-242

Judge Walton, Reverse his order of Granting the
Appellant's three motions above and "Quash" them. RR.V4, p 99-
110. which included Dr. C. O'Toole and Gay Johnson investigator
for O.A. office. And Gay Johnson was in the interview and
in each WHC # 1-5 filed by Appellant.

Judge Walton Overruled an objection of going anything
further about Dr. O'Toole because he was subpoenaed to be here
and the Court quashed his subpoena. RR.V7 p 127-128 The State
was the one who filed those Medical Record of Mr. Garza which
has "No Relevant" to this case of Aggravated Perjury. RR. V6,
p 168, DX 56.

Judge Walton sustained on objection by the State 69 times,
Judge Walton Overrule by the objection of Defense Attorney
22 time, Judge Walton was very partical in this case
favorable to State.

Judge Walton told Mr. Piland, Defense Attorney, about
the days of trial, "Well, Sure, you know, that's your problem."
RR. V7, p 75 Judge Walton knew that the Jury was sitting
confused "We got a big problem here, ... This Jury RR. V8 p 168
Judge Walton was very "BIASED" to Defense in this case.

34

Appellant further testified that, in his opinion, Judge Walton had testimony that would help the defense regarding the content of the attachment to WHC#6, including, but not limited to, the letter from Dr. Hezmall to Dr. O'Toole, a copy of which is the second page of SX.26, which was [A]dmitted during the trial of this case. RR.SV1, p 15-16, SX.26

During the hearing, defense counsel and Judge Walker discussed a part of the Appellant's claim of why Judge Walton should be disqualified. Appellant believed that Judge Walton should be called as a defense witness in the case. RR.SV1, p 16-17 Specifically, Appellant wanted Judge Walton available to testify as a witness. RR.SV1, p 20-21

During the trial of this case, the jury learned that previously Appellant had filed grievances against Judge Walton RR. V8, p 153-154 Appellant had contemporaneously made complaints against Judge Walton. As well. RR. V8 p 153-154.

## ARGUMENT AND AUTHORITIES UNDER POINT OF ERROR NO. 3

The issue in this case is: Does a judge have the Authority to act when he is statutorily disqualified? Case law has long supported that a disqualifications of a trial judge was jurisdictional, and the issue could be raised for the first time on Appeal. <u>Whitehead v. State</u>, 273 S.W. 3d 285, 289 (Tex. Crim. App. 2008, Reh. den.) (Concurring opinion, Justices Johnson and Cochran) Though jurisdiction is something possessed by

35

courts, the judge, as an officer of the court with the authority of a judge, is incident to, and attaches to, the jurisdiction of the court itself. Ex parte George, 913 S.W. 2d 523 (Tex. Crim. App. 1995), 48 A C.J.S. Judges Section 54 (1981). Therefore, jurisdiction includes the power of the court over the subject matter and the person before the court. Whitehead v. State, 273 S.W. 3d at 289. "Even consenting parties cannot waive jurisdictional defects." Ex parte Vivier, 699 S.W. 2d 862, 863 (Tex. Crim. App. 1985).

Texas Code of Criminal Procedure, Article 30.01 provides: "No judge or justice of the peace [s]hall sit in any case where he may be the party injured, or where he has been of counsel for the State or the Accused, or where the Accused or the party injured may be connected with him by consanguinity or affinity within the third degree, as determined under chapter 573, Government Code." Whitehead v. State, 273 S.W. 3d at 287-288, Ex parte Vivier, 699 S.W. 2d at 863

The Court of Criminal Appeals has theorized that the legislative intent behind Article 30.01 may also have been to avoid the spectacle of having a trial court judge preside over a trial in which he might be called as a witness, Tex. Court of Criminal Proc., Article 30.01, see Tex. R. Evid. 605, Whitehead v. State, 273 S.W. 3d at 288 The earlist version of this statute was enacted in 1879, and it was identical in all pertinent respects to the present version, January v. State, 36 Tex. Crim. 488, 38 S.W. 179, 179 (1896).

36

A trial judge's judgment is void, if he had been, or should have been, disqualified from presiding at the trial. Whitehead v. State, 273 S.W.3d at 286, 288-289, Wilson v. State, 977 S.W.2d 379, 380 n.3 (Tex. Crim. App. 1998), Ex parte Vivier, 699 S.W.2d at 863 The Court of Criminal Appeals wrote that Article 30.01 reflected a "compelling policy protecting against the appearance of judicial "bias" and that simply because there was no injury to the judge alleged in the indictment, that did not diminish the concern that he would be perceived by the public as a biased arbiter. Whitehead v. State, 273 S.W.3d at 287-288 Thus, a court should interpret the opening clause of Article 30.01 to mean that a trial court judge, in any particular criminal prosecution, "that may be the party injured," is therefore disqualified from presiding over the trial. Whitehead v. State, 273 S.W.3d at 288-89 Evidence that a judge is a victim in a case, goes beyond the criminal transaction at issue, and it includes actions by the judge or situations in which the judge is involved, such that a reasonable person would harbor doubts as to his impartiality. Whitehead v. State, 273 S.W.3d at 288-289

Clearly, Judge Walton was "involved" in receiving, reviewing and making orders relative to WHC#6 and all of the other writs (1-5) that had been filed previously in the case and that were entered into evidence by the State. SK. 1-6 and 1B-6B (inclusive) Judge Walton was a witness to the writs filed in the case and Appellant had "expressed" an opinion that Judge Walton was a likely defensive witness — facts that Appellant clearly brought to the attention of the administrative judge at the

37

pre-trial hearings. *Lackey v. State*, 364 S.W.3d 837, 846 (Tex. Crim. App. 2012), *Lankston v. State*, 827 S.W.2d 907, 908 (Tex. Crim. App. 1992) Additionally, Judge Walton had represented Appellant in a prior case, one with similar facts and similar defenses.

"The District Attorney, to his credit, recused himself and delegated his prosecution duties to a special prosecutor; and, the District Attorney may not have had as many, nor as involved contacts (defensive or otherwise), with the Appellant, *as did Judge Walton.*"

Even in civil cases, a judge shall be recused in any proceeding in which the judge's impartiality might reasonably be questioned, Tex. R. Civ. P. 186 (2)(A) The deprivations of a defendant's right to a trial before an impartial judge is a structural defect in the trial. *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed. 2d 302 (1991) Structural error is not subject to harmless error analysis. *Arizona v. Fulminante*, 499 U.S. at 308-10; *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) Therefore, even if an appellate court is convinced that a disqualified judge's involvement in a case was harmless, that involvement still requires "REVERSAL" of the case. *Burkett v. State*, 196 S.W.3d 892, 896 (Tex. App. — Texarkana 2006)

Judge Walton should have been found to be statutorily disqualified from presiding at Appellant's trial. *Lackey v. State*, 364 S.W. 3d at 849 Discretionary acts by a disqualified judge create "REVERSIBLE" error. *Lackey v. State*, 364 S.W.3d at 849

38

Burkett v. state, 196 S.W.3d at 894 The resulting judgment of conviction should be ruled a nullity. Whitehead v. state, 273 S.W.3d at 289 Appellant asks this court to overrule the court of Appeals opinion and order.

## Point of ERROR NO. 4 RESTATED

The Evidence is legally insufficient to support the Judge's order That Appellant pay Attorney's fee And costs.

## STATEMENT of FACTS Under Point of ERROR NO. 4

The Court of Appeals 2nd District of Texas did have 10,880.27 Removed from lower Court order. Appellant Asks that if this court find ERROR ~~Any~~ in Any Point that it would overrule the court of Appeals order, And Remove the $436.00 of Court Costs.

39

# CONCLUSION

Appellant's documents inside his prison cell were protected by the 4th Amendment. Appellant was coerce and in duress to give Mr. Young a false confession so Appellant could keep his five Trial Transcripts ($2,322.00). State had no warrant to search or seize Appellant's personal and legal files, so Mr. Young turn off his records and forge Appellant's signature on a consent to search form. NOE #1

Therefore Appellant's written and oral statement gathered by DA's investigator Robert Young as a result of using the tainted documents should be suppressed.

The evidence does not support Appellant's guilt to the charge. John Pizer made, prepared and used the forge documents when he assembled and filed WHC #6, without any direction from Appellant,

Judge Walton should have been found to be statutorily disqualified from presiding at Appellant's trial. This amount to jurisdictional ERROR, and the resulting judgment of conviction should be ruled a Nullity.

Appellant asks this court to revers the court of Appeals order of $436.00 to be taken from Appellant's Account.

Paul Villegas Young
June 25, 2015

40

## PRAYER

Appellant asks this Court to Review the Record and this Motion for P.D.R. and to make any orders for further proceedings consistent with all of the rights and protections Appellant is due under the law. Appellant asks for all other relief to which he may be entitled.

Respectfully Submitted,

Raul Villejas Garza #1242854

## Certificate of Service

I hereby certify that I have on this 25 day of June, 20 15, mailed this P.D.R. to the Criminal of Appeals in Austin from Michael Mail Room here in Michael Unit, Tenn. Colony, Texas 75886.

Raul Villejas Garza

41

Texas:
3021 Ridge Road, Suite A-130
Rockwall, Texas 75032
Phone: (214) 458-6009
Fax: (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado 80202
Phone: (303) 330-8636
Fax: (303) 265-9087

# Wendy Carlson

## Expert Document Examiner

www.AmericasHandwritingExpert.com
ws.carlson@yahoo.com

---

Questioned Document Examiner Letter

January 5, 2015
Subject: *Robert Young*

I have examined five (5) documents with the signatures of Robert Young. For the purpose of this examination I have labeled these exhibits 'S1' through 'S5'.

Today I have compared the signatures of Robert Young on the 'S' documents to the Raul Villegas Garza signature on the questioned document, labeled herein as 'Q6' to determine if the author of the Robert Young signatures on the 'S' documents was the same person who signed the name of Raul Villegas Garza on the questioned document: a Consent to Search form dated 3/4/13, purportedly signed by Raul Villegas Garza.

Handwriting is not only handwriting but also "brain" writing. Handwriting is formed by repeated habits of writing by the author that are created by neural pathways established in the brain. These neural pathways control muscular and nerve movement for writing, whether the writing is executed by hand, foot, or mouth. An examination of handwriting includes establishing patterns of writing habits to help identify the author.

A meticulous examination and side-by-side comparison of the questioned signatures was conducted using the unaided eye, handheld magnifying loupes, photocopy enlargements and metric measuring devices. The scientific methodology used in this examination consists of the "ACE" method, which stands for "Analyze, Compare and Evaluate," the same method reportedly used by the FBI, the U.S. Treasury Department and U.S. Postal Service in their questioned document laboratories. This method was also accepted and affirmed by the District of Columbia Court of Appeals in Case No. 08-CF-1361, *Pettis v. United States*.

My hypothesis was formed without bias as to authorship of the questioned handwriting and signature. My examination revealed significant similarities present in the questioned handwriting and signature when compared to the known handwriting and signatures. All tests were done with accepted scientific methodology, techniques, and scientific instruments, which helped to confirm authorship of the questioned signature.

N.O.E. #1

_____

Based on my scientific examination and agreement of the unique, identifiable handwriting characteristics and the measurable distinctions in the questioned handwriting and signature, it is my professional expert opinion that it is highly probable that the same person who authored the name of Robert Young on the 'S' documents was also the author of name of Raul Villegas Garza on the questioned document. Robert Young did highly probably author the name of Raul Villegas Garza on the questioned document 'Q6'.

I am willing to testify to this fact in a court of law and I will prove to the Court that my opinion is correct. My Curriculum Vitae is attached and incorporated herein by reference.

Respectfully submitted,

Wendy Carlson

State of Texas          §
                        §
County of Rockwall      §

　　　　The above Letter of Opinion was subscribed before me by Wendy Carlson this 6th day of January, 2015.

_____
Notary Public

VALERIE J NASTASI
My Commission Expires
August 11, 2018



# Consent to Search

1. You have the right to remain silent
2. Anything you say or do can and will be used against you in a Court of Law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned, or at anytime you choose.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish.
5. You have the right to stop answering questions anytime you chose.
6. You have the right to refuse permission to search your property, whether owned, leased, or under your control, without a valid search warrant.
7. Anything found in, on, or about your property may be seized and used as evidence against you in a Court of Law.

State of Texas,
County of Hood

I ___Raul V. Garza___, hearby grant my consent to ___Robert Young___ and _____, Deputies of the Hood County Sheriff's Office to search the following:

___ Vehicle located at: _____

Vehicle described as: Year _____ Make: _____ Model: _____ Color: _____
License Number: _____ Vin # _____
Including containers and contents located therein.

___ Apartment / House located at: _____

Including: _____

___ Place of business known as: ___Documents from Inmate Raul Garza's Jail___
Located at: ___Cell C TUCJ Michael Unit.___
Including: _____
_____

I understand that I have the right to refuse consent to the search described above and to refuse to sign this form.

I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been use against me to get me to consent to the search described above or to sign this form.

SIGNED: _____ DATE: __3/4/13__

WITNESSES: _____ TIME: __1853__ AM/PM

_____

QDE EXHIBIT
Q6

RYK



# Consent to Search

1. You have the right to remain silent.
2. Anything you say or do can and will be used against you in a Court of Law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned, or at anytime you choose.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish.
5. You have the right to stop answering questions anytime you chose.
6. You have the right to refuse permission to search your property, whether owned, leased, or under your control, without a valid search warrant.
7. Anything found in, on, or about your property may be seized and used as evidence against you in a Court of Law.

---

**State of Texas,**
**County of Hood**

I _Raul V. Garza_, hereby grant my consent to
_Robert Young_ and _____, Deputies of the Hood County Sheriff's Office to search the following:

___ Vehicle located at: _____

Vehicle described as: Year _____ Make: _____ Model _____ Color: _____
License Number: _____ Vin # _____
Including containers and contents located therein.

___ Apartment / House located at: _____

including, _____

___ Place of business known as _Documents from Inmate Raul Garza's Jail_
Located at: _Cell C TDCJ Michael Unit._
Including: _____
_____

I understand that I have the right to refuse consent to the search described above and to refuse to sign this form.

I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been use against me to get me to consent to the search described above or to sign this form.

SIGNED: _[signature]_          DATE: _3/4/13_

WITNESSES: _[signature]_       TIME: _1853_ A.M./P.M.

QDE EXHIBIT
51

# Hood County District Attorney
## 355th Judicial District
# VOLUNTARY STATEMENT

CASE # _____

FULL NAME _Raul Villegas Garza_  DATE OF BIRTH _12/31/1960_

HOME ADDRESS _2664 FM 2054 Michael Unit_  DATE _3/4/2013_

HOME PHONE _____  WORK PHONE _____  TIME STARTED _____

DL NUMBER _09363876_  SOCIAL SECURITY NUMBER _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_

Before answering any questions or making any statements, Investigator Robert Young, a person who identified himself or herself as an Investigator for the Hood County District Attorney, duly warned and advised me, and I know and understand that I have the following rights:

1. I HAVE THE RIGHT TO REMAIN SILENT AND NOT MAKE ANY STATEMENT AT ALL AND ANY STATEMENT I MAKE MAY BE USED AGAINST ME AT MY TRIAL.
2. ANY STATEMENT I MAKE MAY BE USED AS EVIDENCE AGAINST ME IN COURT.
3. I HAVE THE RIGHT TO HAVE A LAWYER PRESENT TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
4. IF I AM UNABLE TO EMPLOY A LAWYER, THAT I HAVE THE RIGHT TO HAVE A LAWYER APPOINTED TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
5. I HAVE THE RIGHT TO TERMINATE THE INTERVIEW AT ANY TIME.

Fully understanding my rights, I hereby knowingly, intelligently and voluntarily waive my right to remain silent, and my right to have a lawyer present while I make the following statement to the aforesaid person, knowing that I have the right and privilege to terminate any interview at any time hereafter and have a lawyer present with me before answering any more questions or making any more statements, if I choose to do so.

I declare that the following voluntary statement is made of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

Mr. Christian, what can I say, but I sorry for making these false document. But, I believe that you and your office knowly used perjury testimony in my trial. Please understand my reason, I knew it would come back and get me, But, I hope in this investigation done by investigator Mr. Young the truth will come out that according to the endictment statewitness investigator Gay Johnson lied, she perjury herself to get a conviction, and she was part of the prosecution team.

I know I was in the wrong for this act but, all I was trying to get was a hearing

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature, and corrections if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

TIME COMPLETED _____  DATE COMPLETED _____

WITNESS _____ #4X8

WITNESS _____

Signature of person giving voluntary statement

QDE EXHIBIT

52

# Hood County District Attorney
## 355th Judicial District
## VOLUNTARY STATEMENT

CASE # _____

FULL NAME _____   DATE OF BIRTH _____

HOME ADDRESS _____   DATE _____

HOME PHONE _____   WORK PHONE _____   TIME STARTED _____

DL NUMBER _____   SOCIAL SECURITY NUMBER _____

Before answering any questions or making any statements, **Investigator Robert Young**, a person who identified himself or herself as an Investigator for the Hood County District Attorney, duly warned and advised me, and I know and understand that I have the following rights:

1. I HAVE THE RIGHT TO REMAIN SILENT AND NOT MAKE ANY STATEMENT AT ALL AND ANY STATEMENT I MAKE MAY BE USED AGAINST ME AT MY TRIAL.
2. ANY STATEMENT I MAKE MAY BE USED AS EVIDENCE AGAINST ME IN COURT.
3. I HAVE THE RIGHT TO HAVE A LAWYER PRESENT TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
4. IF I AM UNABLE TO EMPLOY A LAWYER, THAT I HAVE THE RIGHT TO HAVE A LAWYER APPOINTED TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
5. I HAVE THE RIGHT TO TERMINATE THE INTERVIEW AT ANY TIME.

Fully understanding my rights, I hereby knowingly, intelligently and voluntarily waive my right to remain silent, and my right to have a lawyer present while I make the following statement to the aforesaid person, knowing that I have the right and privilege to terminate any interview at any time hereafter and have a lawyer present with me before answering any more questions or making any more statements, if I choose to do so.

I declare that the following voluntary statement is made of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

_did. Please grant mercy. I would file or work on my freedom or actual innocence until I get out._

_Mr. Christian, according to Mr. Young you are a honest District Attorney. Allow him to investigate Kay Johnson. Testimony with her simple statement by me and the video tape of the interest, Mr. Christian you will see that investigator Johnson lied on the witness stand. This does not make it right what I did. But this is the reason I did what I did. Sincerely,_

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature, and corrections if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

TIME COMPLETED _____   DATE COMPLETED _____

WITNESS _____

WITNESS _____

Signature of person giving voluntary statement

QDE EXHIBIT

S3

# Hood County District Attorney
## 355th Judicial District
## VOLUNTARY STATEMENT

CASE # _____

FULL NAME _____ DATE OF BIRTH _____

HOME ADDRESS _____ DATE _____

HOME PHONE _____ WORK PHONE _____ TIME STARTED _____

DL NUMBER _____ SOCIAL SECURITY NUMBER _____

Before answering any questions or making any statements, Investigator Robert Young, a person who identified himself or herself as an Investigator for the Hood County District Attorney, duly warned and advised me, and I know and understand that I have the following rights:

1. I HAVE THE RIGHT TO REMAIN SILENT AND NOT MAKE ANY STATEMENT AT ALL AND ANY STATEMENT I MAKE MAY BE USED AGAINST ME AT MY TRIAL.
2. ANY STATEMENT I MAKE MAY BE USED AS EVIDENCE AGAINST ME IN COURT.
3. I HAVE THE RIGHT TO HAVE A LAWYER PRESENT TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
4. IF I AM UNABLE TO EMPLOY A LAWYER, THAT I HAVE THE RIGHT TO HAVE A LAWYER APPOINTED TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
5. I HAVE THE RIGHT TO TERMINATE THE INTERVIEW AT ANY TIME.

Fully understanding my rights, I hereby knowingly, intelligently and voluntarily waive my right to remain silent, and my right to have a lawyer present while I make the following statement to the aforesaid person, knowing that I have the right and privilege to terminate any interview at any time hereafter and have a lawyer present with me before answering any more questions or making any more statements, if I choose to do so.

I declare that the following voluntary statement is made of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

that the truth would come out I had filed five state writ 11.07. four with new evidence but you never wrote what you found in them.

I know that this is not Case 9232, But Please understand my motive was only to get a hearing in my case to show you and the court that 2 important state witness lied and to get a upto day medical examination. don't that will prove that Both ex-wive perjury themself.

Again, I very sorry about do what I

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature, and corrections if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

TIME COMPLETED _____ DATE COMPLETED _____

WITNESS _____ #476

WITNESS _____

Signature of person giving voluntary statement

QDE EXHIBIT

54

Respectfully submitted,

_____
Lori J. Kaspar
Hood County Attorney
Special Prosecutor
SBN 24050854

Hood County Attorney's Office
1200 W. Pearl St.
Granbury, Texas 79048
817-579-3216

_____
Gay Johnson

_____
Wanda Flanary

_____
Robert Young

_____
Colleen Sells

_____
Dolores Phillips

_____
Faith Olson

_____
Priscilla Kindle Sides

State's Motion to Quash – CR12706 – Raul V. Garza                8

166

QDE EXHIBIT
55

Texas:
3021 Ridge Road, Suite A-130
Rockwall, Texas 75032
Phone: (214) 458-6009
Fax: (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado 80202
Phone: (303) 330-8636
Fax: (303) 265-9087

# Wendy Carlson

Expert Document Examiner
www.AmericasHandwritingExpert.com
ws.carlson@yahoo.com

# Curriculum Vitae

## *Qualifications:*

Wendy Carlson is a Certified Forensic Document Examiner and Registered Investigator. Ms. Carlson has been qualified as an Expert by State, Local, and Federal courts and has testified in Arizona, Arkansas, Colorado, Florida, Michigan, New York, Oklahoma, Pennsylvania, Texas, Utah, Virginia, Washington and Wyoming. She has studied handwriting and document examination and apprenticed under some of the leading court-qualified Forensic Document Experts in the U.S.A. Wendy has been appointed by federal and state court judges to render opinions on handwriting issues in Colorado and Texas and has completed forensic document examinations for government entities such as Grand Prairie Police Department, Hill County and State Bar of Texas in Texas; Offices of the State or Federal Public Defenders in Nevada, New York and Wyoming; Office of the General Counsel in Oklahoma; Buena Vista Police Department, Chaffee County Sheriff's Department, and City and County of Denver in Colorado.

In the last six years, Ms. Carlson has examined more than 10,000 documents and rendered opinions in approximately 850 active cases and multiple peer reviews involving questioned signatures, altered documents, handwritings, legal contracts, court documents, anonymous writing, and graffiti. Ms. Carlson has rendered opinions on documents from clients in the following states and foreign countries: Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, Wyoming, Washington D.C., Albania, Bahamas, Canada, Chile, Cook Islands, Estonia, Haiti, Hong Kong, India, Kenya, Liberia, London, Morocco, New Zealand and Ukraine. Ms. Carlson has examined documents and rendered opinions for handwriting comparisons written in Afghani, Arabic, Chinese, Eastern Indian, English, Greek, Korean and Spanish writing.

Ms. Carlson's expertise was featured in CNN, The Dallas Morning News, and The Houston Chronicle, as well as investigative reports by ABC's The Denver Channel and CBS4 in Denver, Colorado. Ms. Carlson was hired by the State of Colorado's Denver Election Division to teach employees how to identify a questioned signature prior to the 2011, 2012, 2013 and 2014 local and national elections.

## *Forensic Examination Provided For:*

Disputed documents or questioned signatures on wills, checks, contracts, deeds, account ledgers, suspect documents, forgeries, identity theft, anonymous letters and writings, alterations, obliterations, erasures, typewritten documents, altered medical records, graffiti, handwritten numbers, computerized and/or handwritten documents, suicide notes, and autograph authentication.

## *Education:*

*International School of Forensic Document Examination, Los Angeles, California, 2007-2009*

Certification after completion of a two-year course and apprenticeship under leading authorities in the field of Forensic Document Examination and Handwriting Identification from the International School of Forensic Document Examination. Attended weekly classes, lectures and teleseminars from Court Qualified Document Examiners and Instructors Bart Baggett, Robert Baier, Don Lehew, and Beth Chrisman. Prepared for, observed, and testified in actual court trials.

*Twelve years experience* assisting multiple trial attorneys in case and trial presentation, 1996-2008

*Printed January 28, 2015*

<u>American College of Forensic Examiners International</u>

Certification after Completion of Registered Investigator Course, July 2010
Certification after Completion of Crime Scene Investigation Course, November 2010
Certification after Completion of Digital Forensics Introduction Course, November 2010

<u>American Institute of Applied Science, Inc.</u>

Completed lessons and exams for Questioned Documents course, April 2012

**Specific Areas of Training:**

Handwriting Identification and Discrimination, Signature Comparison, Techniques for Distinguishing Forged Signatures, Disguised Handwriting, Hand Printing, Block Printing, Altered Numbers, Anonymous Writing, Factors that Affect Writing, Altered Documents, Trial and Deposition Preparation, Document and Exhibit Preparation for Court, Discriminating Elements of Handwriting, Obliterated Writing, Ethics Requirements of a Document Examiner.

**Laboratory Equipment and Library Available for Use in Examination:**

Richter Optica S6.6 LCD Stereo Zoom Microscope with screen and camera, handheld magnifying devices and loupes of 3x-20x, Light Tracer light box, protractor, metric measuring devices, portable black light, Kodak 10x Optical IS digital camera, iMac computer and software, 21.5-inch flat screen monitor, multiple scannesr, printers and copiers. Various books and articles on document examination, handwriting, and hundreds of detailed case studies from actual cases.

**Professional Memberships:**

American College of Forensic Examiners International
Center of Forensic Profiling
Forensic Expert Witness Association
Forensic Handwriting Institute
IMS ExpertServices
Sheriff's Association of Texas
Texas Police Association

**Publications:**

How to Spot a Forgery
Working With an Expert Witness

**Lectures, Seminars and Continuing Education:**

11/12/08   The Scope and Sources of Document Examination; Professor: Bart Baggett
12/03/08   Science, Scientific Method, and Writing Identification; Professor: Bart Baggett
12/10/08   Review and Discussion of American Society for Testing and Materials; Professor: Bart Baggett
12/12/08   Assistance in preparation and observation of forgery trial held in the Bahamas with C. L. Baggett
02/18/09   Understanding the Trial; Professor: Bart Baggett
02/28/09   Real Case Mock Trial
03/11/09   A Guide to Law and the Courts, and Rules of Evidence; Professor: Bart Baggett
03/25/09   Real Case Mock Trial
06/23/07   Trial and deposition appearance, testimony, and presentation; Lecturer: Carolyn West
07/02/09   ASTM Guidelines; Professor: Bart Baggett
07/09/09   Jury Selection and an Understanding the Law and the Courts; Real Case Mock Trial; Professor: Bart Baggett
07/23/09   The Rules and Future Challenges to the Expert; Professor: Bart Baggett
09/25/09   Critical Incident Stress: Statement Analysis and Interview v. Interrogation; Instructor: Faith Wood
01/28/10   Working with the Expert Witness...the Plaintiff Attorney's Prospective; Lecturer: Windle Turley, Esq.
07/15/10   Certification after Completion of Registered Investigator Course, ACFEI, July 2010
08/14/10   Forensic Document Examination Seminar training and instruction with Professor Bart Baggett and Instructor Robert Baier

2

08/14/10   Identity Theft and Prevention; Instructor Robert Baier
08/15/10   Testing of students for Certification at Handwriting University
08/31/10   Introduction to Forensic Document Examination; Instructors Bart Baggett and Beth Chrisman
09/29/10   Attendance and observation of deposition held in Texas with C. L. Baggett
10/01/10   Lecturer and Instructor - Introduction to Forensic Document Examination, Clear Lake High School, Houston, Texas
11/08/10   CLE: Demystifying Daubert: Daubert's Effect on Your Work as an Expert Witness; presented by The TASA Group, Inc.
11/16/10   Certification after Completion of Crime Scene Investigation Course, ACFEI, November 2010
11/16/10   Certification after Completion of Digital Forensics Introduction Course, ACFEI, November 2010
04/15/11   Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado
03/08/12   Continuing research on Science and the Scientific Method
03/11/12   Continuing research on the Significance of Measurements in Forensic Document examination
04/02/12   Continuing research on Disguised Handwriting
04/06/12   Completed American Institute of Applied Science, Inc. lessons and exams for Questioned Documents course
06/08/12   Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado
08/17/12   Attendance and observation of criminal trial with Bart Baggett, Expert QDE, in Los Angeles, California
10/12/12   Lecturer and Instructor - Refresher Course: "How to Spot a Forgery", Denver Elections Division, Denver, Colorado
10/16/12   Continuing research regarding ESIGN, electronic documents and records, and electronic signatures
12/15/12   Speaker - Holographic Wills and Signatures, Military Order of Purple Hearts Annual Meeting, Dallas, Texas
02/05/13   Speaker - Introduction to the Science of Handwriting and Document Examination, Jesuit College Preparatory School, Forensic Science Department, Dallas, Texas
02/21/13   Speaker - Introduction to the Science of Handwriting and Document Examination, Irma Lerma Rangel Young Women's Leadership School, Dallas, Texas
02/20/14   Expert Witnesses and Lawyers Caught Off Guard: Lessons Learned, EJ Janik, Gary Kessler, Esq.
10/18/13   Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado
05/14/14   Continuing research on handwriting of individuals with Parkinson's Disease
06/06/14   Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado
06/23/14   Instruction and Training of new ballot and voter signature input equipment and software, Denver Elections Division, Denver, Colorado
01/19/15   Lecture and Presentation/Training – "How to Spot a Forgery", Colorado County Clerks Association, Pueblo, Colorado